**Ed CARPENTER, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

April 24, 1959.

John P. Allen, E. R. Denney, Mt. Vernon, Denney & Landrum, Lexington, for appellant.

Jo M. Ferguson, Atty. Gen., Seth T. Boaz, Jr., Asst. Atty. Gen., for appellee.

STEWART, Judge.

Ed Carpenter, James Burton and Woodrow Williams were jointly indicted as principals for grand larceny growing out of the theft of a power lawn mower valued at more than $20. See KRS 433.220. Williams entered a plea of guilty when the case was called for trial. Carpenter and Burton, having pleaded not guilty to the charge, were tried, convicted and each sentenced to the penitentiary for one year.

Carpenter alone has appealed, urging a reversal of the judgment upon the grounds that the evidence introduced against him was not sufficient to take the case to the jury nor to sustain a verdict of guilty.

The evidence, which for the most part is uncontradicted, shows Carpenter on the afternoon of May 5, 1958, met Burton and Williams in the town of Brodhead in Rockcastle County, and this trio shortly thereafter proceeded in an automobile owned by Carpenter to the home of Gordon Proffitt, who resides on the Somerset highway near Crab Orchard. At this place Williams went into Proffitt's house and talked to him privately for some fifteen minutes about buying a power lawn mower, while Carpenter and Burton remained in the car.

Upon Williams' rejoining Carpenter and Burton, the three returned to Brodhead and then went to the farm of Felix Wilson, where Williams got out of the car some distance before they arrived at the Wilson residence. Carpenter accompanied by Burton drove on down the road about a mile and a half, turned around and then came back. When the car stopped for him, Williams was standing near the road waiting for it "this side of" the Wilson home with a power lawn mower. This machine was placed in the back seat of the automobile, whereupon they retraced their course to the Proffitt residence. Wilson and his wife were in Indiana at the time visiting a sick grandson and Williams apparently knew of this fact.

Williams was given a $30-check by Proffitt for the power lawn mower. With some of the proceeds of the check he paid a filling station operator two dollars for gasoline for Carpenter's car. Later, Williams bought two half-pints of whiskey which his two companions helped him consume. Afterwards they rode around together until

along about midnight but, before they part-ed, more gasoline was placed in Carpenter's car at Williams' expense and another quantity of whiskey was purchased by him and drunk by them. Williams kept what remained over of the money obtained from the sale of the power lawn mower.

Carpenter testified he was not aware, when he took Williams to the Wilson farm to pick up the power lawn mower, and also when he transported it in his car to the Proffitt place, that it was stolen property. He said Williams, who had previously worked for Wilson, assured him he was merely making a delivery of the machine to Proffitt. According to his testimony, he and Burton made the two trips to the home of Proffitt and the trip to the Wilson farm, at the request of Williams, and he at no time was within earshot when Williams negotiated for the sale of the power lawn mower. He asserted he had no knowledge of where Williams got the money to purchase the gasoline and the whiskey. Burton's testimony tended to corroborate that of Carpenter. The credibility of Carpenter and Burton as witnesses was impeached by their admitting they had been previously convicted of felonies of a larcenous nature.

In the case at bar all the elements are present to establish an unlawful taking upon the part of Carpenter, acting in concert with Williams and Burton, except that direct proof is lacking to show his felonious intent to commit the crime. The only testimony regarding his intent on the occasion is his own, but we are not compelled to rely wholly upon his statements in order to determine what his intent then was. The principle of law controlling in such a situation is aptly stated in 52 C.J.S. Larceny § 136a, p. 977, in this language: "The intent with which the property alleged to be stolen was taken by an accused may be proved by circumstantial evidence, for the obvious reason that such evidence is generally the only means of proof available for the prosecution. * * *"

The course of conduct of Carpenter at the Wilson farm, where the power lawn mower was stolen, raises a strong inference that he knew full well a crime was to be perpetrated there and that he proposed to play his part in carrying it out. On the cross-examination of Carpenter it was disclosed he did not let Williams out of the car and later pick him up in front of the Wilson home; instead, he let him out and subsequently picked him up with the power lawn mower some distance from the home. Then, after Williams left the car, Carpenter drove down the road about a mile and a half before he turned around and returned. These acts could easily be construed to indicate a clandestine purpose previously agreed upon; namely, a ruse by Williams to elude his being seen overtly entering the Wilson premises, and a plan by Carpenter to avoid having his automobile recognized at the place where the thieving mission was accomplished. All these movements fit too closely into a preconceived design to be taken for granted as accidental happenings.

We conclude the evidence disclosing Carpenter's presence throughout the commission of the larceny was sufficient to take the case to the jury. Furthermore, it is our view the jury was justified in accepting the circumstances surrounding the crime as proof of the felonious intent necessary to implicate Carpenter as a principal and in rejecting his testimony that he merely co-operated with Williams in ignorance of the criminal purpose behind the latter's acts.

Wherefore, the judgment is affirmed.